IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| DAN EINHORN, § | |
| Plaintiff, § | |
| § | |
| v. § | Cause No.: EP:16-CV-00025-PRM |
| § | |
| HINDUJA GLOBAL SOLUTIONS, L.L.C., § | |
| a/k/a HGS, L.L.C., § | |
| Defendant, § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff Dan Einhorn ("Employee Einhorn") now files this First Amended Complaint complaining of Hinduja Global Solutions, L.L.C., a/k/a HGS, L.L.C. ("Employer HGS"), and respectfully shows as follows:

**I. PARTIES**

1. Dan Einhorn is a male citizen of the United States of America, residing in El Paso, Texas, and at all times relevant to this litigation was employed by Hinduja Global Solutions, L.L.C., a/k/a HGS, L.L.C. Dan Einhorn's date of birth is July 18, 1960. Dan Einhorn was an employee within the meaning of the ADA, the ADAAA, and Texas Labor Code Chapter 21.

2. Hinduja Global Solution, LLC., a/k/a HGS, L.L.C., is an entity doing business in Texas (including in El Paso County, Texas) that has been served with process by service on its registered agent, CT Corporation, 1999 Bryan Street, Suite 900, Dallas, Texas 75021-3136.

## II. JURISDICTION

3. Jurisdiction is proper in this Honorable Court based on federal question jurisdiction and diversity jurisdiction.

## III. VENUE

4. Venue is proper in this Court as the district in which all or a substantial part of the events or omissions giving rise to Employee Einhorn's claims occurred.

## IV. DISABILITY DISCRIMINATION CHRONOLOGY

5. Employers must protect employees from disability discrimination to prevent harm to employees from job loss, loss of income, and from depression due to job loss.

6. Employers must provide a reasonable accommodation to disabled employees for a known disability, when not an undue burden, to prevent financial losses and emotional harms to employees due to job loss.

7. Employer HGS is an employer which must protect its employees from disability discrimination to prevent harm to employees from job loss, loss of income, and from depression due to job loss.

8. Employer HGS is an employer which must provide a reasonable accommodation to disabled employees for a known disability, when not an undue burden, to prevent financial losses and emotional harm to employees due to job loss.

9. Employer HGS is on notice during Employee Einhorn's interview that he is blind in his left eye due to a congenital birth defect.

10. Employer HGS is on notice during Employee Einhorn's interview that Employee Einhorn needs merely to use two (2) computer monitors to see and work.

11. Employer HGS's interviewer tells Employee Einhorn that his request for accomodation is reasonable and that Employer HGS agrees to provide him with two (2) computer monitors.

12. On or about June 19, 2014, Employer HGS hires Employee Einhorn to work as a Health Care Customer Service Representative on the project NOVA account making $10 per hour.

13. Employer HGS's Offer of Employment Form indicates that Employee Einhorn's orientation will last sixteen (16) weeks.

14. Employer HGS notifies Employee Einhorn that he will begin training on June 30, 2014.

15. On or about July 7, 2014, Employer HGS's Manager Dale Churchill ("Manager Churchill"), receives Employee Einhorn's request for a reasonable accommodation to allow Employee Einhorn to merely adjust the mouse cursor to make it larger and to change the dots per inch (DPI) settings on his monitor screen so he could see it well enough to do his job.

16. Employer HGS's Manger Churchill is also on notice that Employee Einhorn requests that Manager Churchill contact the IT Department so it will unlock Employee Einhorn's computer, so he is able to make the adjustments and thereby do his job.

17. Instead, Manager Churchill tells Employee Einhorn that he will see what he can do to assist Employee Einhorn.

18. On or about July 16, 2014, Employer HGS's Operations Manager Alfredo Mendoza ("Operations Manager Mendoza") receives Employee Einhorn's requests that (1) the monitor screen and the mouse settings be adjusted so that Employee Einhorn can see, and (2) that Manager Mendoza contact Employer HGS's IT department to assist Employee Einhorn with his prior requests for a reasonable accommodation including merely providing him with two screen monitors to use.

19. In addition, Operations Manager Mendoza receives Employee Einhorn's request for Operations Manager Mendoza to contact Blue Shield California to determine what kind of accommodations Blue Shield California provides to similarly situated employees to ascertain potential accommodations for Employee Einhorn to perform his job.

20. Employer HGS's Operation Manager Mendoza informs Employee Einhorn that there is nothing he can do to accommodate Employee Einhorn.

21. After requesting these accommodations from Operations Manager Mendoza, Employer HGS instead isolates Employee Einhorn from his co-workers.

22. Employer HGS moves two employees who are sitting next to Employee Einhorn away from Employee Einhorn.

23. On or about July 23, 2014, Employer HGS's Senior Human Resource's Representative, Angie Lozano ("HR Representative Lozano") receives Employee Einhorn's requests for reasonable accommodations, i.e. to provide him with two screen monitors or to merely adjust the mouse cursor and the DPI (dots per inch) settings on his then-current monitor.

24. HR Representative Lozano tells Employee Einhorn that she will see if there is any way she can accommodate his requests.

25. Thereafter, Employer HGS requires Employer Einhorn to take assessment exams during the training period.

26. All of the assessment exams that Employer HGS requires Employee Einhorn to take, however, are on the unadjusted screen monitors.

27. In order to pass each of Employer HGS's assessment exams, Employee Einhorn must score a 85% or higher.

28. On or about August 4, 2014, Employer HGS administers the first of six assessment exams to Employee Einhorn.

29. Employee Einhorn fails the first assessment exam.

30. On or about August 5, 2014, Employer HGS re-administers the same assessment exam to Employee Einhorn.

31. Employee Einhorn again fails this assessment exam.

32. After the second test, Employer HGS's Operations Manager Mendoza calls Employee Einhorn and six to seven other employees into a separate room to discuss their failing of the assessment exams.

33. Out of the six assessment exams that Employer HGS administers to Employee Einhorn, he passes one.

34. On or about August 6, 2014, HR Representative Lozano places Employee Einhorn on administrative leave.

35. The reason HR Representative Lozano gives Employee Einhorn for Employer HGS placing him on administrative leave is because Employee Einhorn failed the majority of Employer HGS's assessment tests during training.

36. On or about August 13, 2014, Employer HGS, through its Human Resources Director Shelley Hodelka ("HR Director Hodelka"), and HR Representative Lozano, call Employee Einhorn via telephone and terminate him.

37. The reason HR Director Hodelka and HR Representative Lozano give Employee Einhorn for terminating him is because Employee Einhorn failed to pass the majority of Employer HGS's assessment tests during training.

38. During this call, HR Director Hodelka and HR Representative Lozano hear from Employee Einhorn that the reason Employee Einhorn did not pass the assessment exams is because Employee Einhorn could not see the exam sufficiently well and that Employee Einhorn has on three separate occasions requested accommodations for his sight disablity.

39. HR Director Hodelka then asks Employee Einhorn why he did not say anything sooner and Employee Einhorn replies that he has asked for accommodations to his disability, repeatedly.

40. Despite this report, Employer HGS fires Employee Einhorn on about August 13, 2014 anyway.

41. All conditions precedent to the filing of this action have occurred or have been satisfied.

## V. Causes of Action- Disability Discrimination

42. Employer HGS commits an unlawful employment practice against Employee Einhorn because of his disability in violation of the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act ("ADAAA").

43. Employer HGS fails to provide Employee Einhorn with a reasonable accommodation in violation of the ADA, as amended by the ADAAA.

44. Employer HGS discriminates, retaliates against, and fires Employee Einhorn in violation of the Texas Commission on Human Rights Act, codified at Texas Labor Code Chapter 21, which protects disabled employees from discrimination.

## VI. Notice of Right to Sue and File a Civil Action

45. Attached as Exhibit A is the Notice of Right to File a Civil Action by the Texas Commission on Human Rights for Employee Einhorn.

46. Attached as Exhibit B is the Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") for Employee Einhorn.

## VII. Damages and Losses

47. Employee Einhorn seeks statutory damages, back pay, front pay and or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, interest and such other and further legal and equitable relief to which Employee Einhorn is entitled.

48. Additionally, because Employer HGS acted with malice or, at least, with reckless and/or conscious indifference to Employee Einhorn's rights to be free from disability discrimination, Employee Einhorn is entitled to recover punitive damages against Employer HGS.

## VIII. Jury Demand

49. Employee Einhorn demands that a jury decide this case.

## IX. PRAYER

50. Employee Einhorn respectfully prays that he recover from Employer HGS actual damages over $200,000 but not more than $1,000,000, including but not limited to statutory damages, past and future lost earnings, mental anguish and inconvenience, emotional pain and suffering, loss of enjoyment of life, economic damages and benefits in the past and future, compensatory damages, punitive damages, reinstatement, prejudgment interest, post judgment interest, attorney's fees, expert fees, costs, and such other and further relief to which he may show himself to be justly entitled under both Chapter 21 of the Texas Labor Code and the ADA, and as amended by the ADAAA, and in equity. Such damages sought by Employee Einhorn are within the jurisdictional limits of the court.

**SIGNED** on this __2nd__ day of March 2016.

Respectfully submitted,

**CHAVEZ LAW FIRM**
2101 Stanton Street
El Paso, Texas 79902
(915) 351-7772
(915) 351-7773 facsimile

By: _____
**ENRIQUE CHAVEZ, JR.**
enriquechavezjr@chavezlawpc.com
State Bar No.: 24001873
**MIGUEL HERNANDEZ**
miguelhernandez@chavezlawpc.com
State Bar No.: 24090161

**CERTIFICATE OF SERVICE**

This is to certify that on March 2nd, 2016, I electronically filed the foregoing document with the clerk of the court for the United States District Court, Western District of Texas, using the court's electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept that Notice as service of this document by electronic means:

Clara B. Burns
KEMP SMITH, LLP.
PO Box 2800
El Paso, Texas 79999-2800

_____
**Enrique Chavez, Jr.**